IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3103-FL

| | | |
|---|---|---|
| JEREMY PAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| REUBEN F. YOUNG, JENNIE LANCASTER, ROBERT C. LEWIS, and LARRY DUNSTON, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on the motion to dismiss (DE 24) pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants Security Threat Group ("STG") Coordinator Larry Dunston ("Dunston"), Chief Deputy Secretary for Adult Correction Jennie Lancaster ("Lancaster"), Director of Prisons Robert C. Lewis ("Lewis"), and Secretary of the Department of Public Safety ("DPS") Reuben F. Young ("Young"). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court denies defendant's motion.

## STATEMENT OF THE CASE

Plaintiff filed this action *pro se* pursuant to 42 U.S.C. § 1983 on May 9, 2012. Following the court's order of investigation directing North Carolina Prisoner Legal Services ("NCPLS") to investigate plaintiff's action, NCPLS agreed to provide plaintiff representation.

On April 4, 2013, NCPLS filed an amended complaint alleging two claims. Plaintiff first alleged that he is subject to an indefinite detention in solitary confinement as a result of the policies

1

and procedures set forth and enforced by defendants Young, Lancaster, Lewis, and Dunston in violation of the Fourteenth Amendment to the United States Constitution. Second, plaintiff alleges that the conditions in solitary confinement are atypical and significant in relation to the ordinary incidents of prison life and violate the Eighth Amendment to the United States Constitution. As relief, plaintiff seeks declaratory and injunctive relief against all defendants and compensatory and punitive damages against defendants Dunston and Lewis.

On April 16, 2013, defendants filed a motion to dismiss, arguing that plaintiff failed to state a claim upon which relief may be granted. The motion was fully briefed.

## STATEMENT OF FACTS

On January 22, 2012, while plaintiff, a state inmate, was housed in regular population at Bertie Correctional Institution ("Bertie"), a fight occurred in plaintiff's unit. Am. Compl. ¶¶ 12, 39. Plaintiff was not involved with the fight and did not receive a disciplinary infraction.[1] Id. ¶¶ 39, 42. However, two days later, plaintiff was transferred to administrative segregation (solitary confinement) at Bertie. Id. ¶ 45. Lieutenant Biggs, the STG officer at Bertie, visited plaintiff in segregation and assured him that once the investigation into the fight was complete, plaintiff would be released from segregation. Id. ¶ 46.

On February 6, 2012, plaintiff received a notice that recommended he stay on administrative segregation "pending investigation." Id. ¶ 47. Two days later, plaintiff received a notice captioned: "Notice of Action Taken by Classification Authority." The summary of evidence portion on the form stated "[a]gree with additional 45 days on Adm. Seg. pending an investigation." Id. ¶ 48. On

---

[1] Another inmate Jensen Paylor, of no relation to plaintiff, was involved in the fight and did receive a disciplinary infraction. Id. ¶ 43.

February 28, 2012, plaintiff received a notice of hearing which stated that he was being recommended for High Security Maximum Control ("H-Con) status. Id. ¶ 49. The notice also stated that plaintiff was to appear before the Facility Classification Committee ("FCC") on or after March 2, 2012. Id.

Plaintiff subsequently appeared at the FCC hearing. Id. ¶ 52. However, plaintiff was not reasonably informed of the reasons he was being considered for H-Con and was not confronted with any information indicating that placement in H-Con was necessary. Id. On March 6, 2012, plaintiff received a second notice of action taken by the FCC, which stated: "FCC with recommendation for placement on H-Con housing." Id. ¶ 53. On the same day, he received a second notice of hearing indicating that he was being recommended for H-Con and that he would appear before the Director's Classification Committee ("DCC"). Id.

Plaintiff, thereafter, attended the DCC hearing via video conference. Id. ¶ 57. The DPS official appearing through video conference stated that based on what she heard about plaintiff, she was sending him to H-Con. Id. Plaintiff was not confronted with any relevant information indicating placement in H-Con was necessary. Id. Plaintiff then received a third Notice of Action, stating that he was being continued on H-Con. Id. ¶ 58. On March 19, 2012, plaintiff was sent to the H-Con unit at Polk Correctional Institution in Butner, North Carolina. Id. ¶ 60.

On July 16, 2012, plaintiff received notice that a hearing would be held on August 7, 2012. Id. ¶ 79. On the same date, plaintiff also received a Notice of Action taken by the classification authority which stated: "Agree/Disagree with continuation of H-Con." Id. No summary of evidence was provided, and "Agree" was circled and "Disagree" was crossed out. Id. Plaintiff

3

chose not to attend the hearing because he already had been recommended for continuation on H-Con. Id. ¶ 80.

On October 17, 2012, plaintiff received a new notice of hearing for October 22, 2012. Id. ¶ 83. The hearing subsequently was re-scheduled for November 27, 2012. Id. ¶ 84. Plaintiff simultaneously was notified that the classification authority had agreed with his continuation on H-Con status. Id. ¶¶ 84-85. Plaintiff states that DPS was considering promoting plaintiff to M-Con status on the date the amended complaint was filed. Id. ¶ 91.

Prior to being placed in segregation, plaintiff was housed in regular population at Bertie. Id. ¶ 12. As a regular population inmate, plaintiff was permitted to move about Bertie, to leave his housing unit, to participate in outdoor recreation, and to participate in religious services. Id. ¶¶ 14, 16, 17, 18. Plaintiff also had canteen privileges and a prison job. Id. ¶ 15, 19.

In contrast, while on H-Con, plaintiff was confined to his eight square-foot cell for at least twenty-three (23) hours per day, and was not permitted any fresh air or outdoor recreation. Id. ¶¶ 63, 66, 67. Plaintiff, however, was permitted indoor recreation five days per week, for one hour at a time, in a cell adjacent to his own. Id. ¶ 69. Additionally, plaintiff was not permitted to order items from the canteen and was not permitted to attend religious services. Id. ¶¶ 75, 76. Plaintiff suffered from pain in his back, hip, and elbow daily as a result of his limited mobility. Id. ¶ 89.

Although plaintiff admits that he previously associated as a member in the United Blood Nation, he disavowed himself of all ties to the organization in 2010. Id. ¶ 27. Because plaintiff had a prior gang affiliation, DPS validated plaintiff as a member of a Security Threat Group ("STG"). Id. ¶ 28. In January 2012, plaintiff had a STG designation of 1(the lowest level) on a scale of 1 to

4

3.  Id. ¶ 30. Subsequent to his transfer to segregation, plaintiff's STG level was increased to a 3 without explanation. Id. ¶ 32. Plaintiff has not incurred any disciplinary infractions since February 2011. Id. ¶ 33.

## DISCUSSION

A.  Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

B.  Analysis

1.  Due Process Claim

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of

5

law." U.S. Const. amend. XIV, § 1. The due process clause applies if defendants deprived plaintiff of a life or property interest. Sandin v. Conner, 515 U.S. 472 (1995). However, an inmate does not have a liberty or property interest in a particular custody classification, even where disciplinary segregation is involved, unless the inmate can demonstrate that the restraints "'impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Bevarati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (quoting Sandin, 515 U.S. at 484); see McKune v. Lile, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise").

Plaintiff argues that his confinement on administrative segregation imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. Plaintiff contends his conditions in segregation are similar to the conditions the United States Supreme Court determined warranted due process protections in Wilkinson v. Austin, 545 U.S. 209 (2005). Id. at 223-24. In Wilkinson, the Court examined conditions at an Ohio State Penitentiary ("OSP") supermax security prison, and distinguished those conditions from normal segregation units on two grounds. First, the OSP supermax inmates were assigned to segregation for an indefinite period of time and after an initial thirty (30) day review, were reviewed annually. Id. at 224. Second, once assigned to supermax an inmate was disqualified from parole eligibility. Id. Considering both the typical onerous conditions imposed on inmates in segregation, as well as the two additional considerations, the Court concluded that, "[w]hile any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." Id.

6

Plaintiff, in the instant case, has alleged conditions of confinement similar to those experienced by the OSP supermax inmates, including a complete deprivation of outdoor exercise, which has been detrimental to his health, lack of sensory stimulation, and indefinite placement on H-Con status. Plaintiff also alleges a complete lack of due process in that he has never been provided a reason for his placement on segregation status. Based upon the foregoing, the court finds that plaintiff has alleged conditions creating a liberty interest triggering due process protections.

The court now examines whether plaintiff adequately alleged a procedural due process violation. "Prisoners held in lawful confinement have their liberty interests curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." Wilkinson, 545 U.S. at 225. The level of process due for inmates being considered for transfer to administrative segregation includes notice and an opportunity to be heard. Id. at 229 (citing Hewitt v. Helms, 459 U.S. 460, 864 (1983)); Jordan v. Federal Bureau of Prisons, 191 F. App'x 639, 655 (10th Cir. 2006).

Here, plaintiff asserts that, although he was provided notice of a hearing advising him that he was being recommended for H-Con placement, he was not given the reason he was being considered for H-Con status. Am. Compl. ¶¶ 49, 52, 57. Plaintiff further asserts that prison officials never provided him with a reason for his placement on H-Con status through any of his subsequent written notices of action or hearings. Plaintiff additionally alleges that he has incurred no disciplinary infractions since February 2011, which was nearly one year prior to his placement on H-Con status. Id. 26. Based upon the foregoing, the court finds that plaintiff adequately alleged

7

that he failed to receive notice of the reason for placement on segregation or an opportunity to contest the placement. Thus, defendants' motion to dismiss is DENIED as to this claim.

    2.        Conditions of Confinement Claim

Plaintiff alleges that the conditions of his confinement violate his right to be free from cruel and unusual punishment pursuant to the Eighth Amendment. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious' "–and the second prong is subjective–the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " See Strickler, 989 F.2d at 1379 (quotations omitted).

Defendants assert that the conditions of which plaintiff complains are no different from those the Fourth Circuit Court of Appeals determined were not actionable in In re Long Term Admin. Segregation of Inmates Designated as Five Percenters ("Five Percenters"), 174 F.3d 464, 472 (4th Cir. 1999). In that case, plaintiffs alleged, inter alia, that they were "confined to their cells for twenty-three hours per day without radio or television, that they receive[d] only five hours of exercise per week, and that they [could] not participate in prison work, school, or study programs." Five Percenters, 174 F.3d at 471. The court in Five Percenters reasoned that the negative effects of such restrictions on mental health "are unfortunate concomitants of incarceration; they do not, however, typically constitute the 'extreme deprivations . . . required to make out a conditions-of-

8

confinement claim." Id. at 472 (quoting Hudson v. McMillian, 503 U.S. 1, 8-9 (1992)); see also, Williams v. Branker, 462 F. App'x 348, 354 (4th Cir. 2012) ("The fact that the conditions to which Williams was subjected aggravated his mental illness is an unfortunate but inevitable result of his incarceration.").

Plaintiff, in this action, states that the conditions of confinement alleged in Fiver Percenters are distinguishable in that the conditions in the instant action provide a more significant hardship on plaintiff because plaintiff was denied any outdoor for a significant period of time which causes him to suffer pain in his back, hip, and elbow daily, as well as harassment, shame, humiliation, degradation, emotional distress, embarrassment, and psychological distress.[2] Plaintiff further alleges that he has been subjected to these prison conditions without any meaningful notice or opportunity to be heard. Finally, as stated above, plaintiff has sufficiently alleged that his prison conditions posed an atypical and significant hardship. Based upon the foregoing, the court finds that plaintiff's alleged conditions state an Eighth Amendment claim. Whether plaintiff's allegations are sufficient to withstand summary judgment and the determination as to whether defendants are entitled to the affirmative defense of qualified immunity are issues for another day.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (DE 24) is DENIED. The Clerk of Court is DIRECTED to issue an initial order.

SO ORDERED, this the 25th day of February, 2014.

*(signature)*

LOUISE W. FLANAGAN
United States District Judge

---

[2] Plaintiff states that fresh air recreation cages specifically for use by H-Con inmates are available to allow H-Con inmates the opportunity for outdoor recreation, but are not utilized. Am. Compl. ¶ 66.